USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND, ANNUITY
FUND, and APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, et al.,

               Petitioners,

-against-

NEW YORK CITY ACOUSTICS, INC.,

               Respondent.

25-CV-00227 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

## INTRODUCTION

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief Charity Fund; and The Carpenter Contractor Alliance of Metropolitan New York (the "Funds" or "Petitioners") seek to confirm an arbitration award against New York City Acoustics, Inc. ("Respondent"), as well as attorneys' fees and costs, pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. For the following reasons, the petition is GRANTED.

1

## BACKGROUND

I.  **FACTUAL BACKGROUND**

Petitioners in this matter seek to enforce an arbitration award of $23,363.73 against Respondent, entered pursuant to the parties' Collective Bargaining Agreement ("CBA"). *See* Pet. at 8.[1] Petitioners further seek to recover attorneys' fees, costs and interest. *Id.* at 9.

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund are "employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA" and "fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21)." *Id.* ¶ 4. They are based in New York City. *Id.* The Trustees of the New York City Carpenters Relief Charity Fund operate a charitable organization "established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3)." *Id.* at ¶ 5. They are based in New York City. *Id.* The Carpenter Contractor Alliance of Metropolitan New York is "a New York not-for-profit corporation." *Id.* at ¶ 6. They are also based in New York City. *Id.*

New York City Acoustics, Inc. ("Respondent") is a business entity based in Staten Island, New York. *Id.* at ¶ 7. At all relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. *Id.*

Respondent has been bound at all relevant times by an agreement ("the International Agreement") with the United Brotherhood of Carpenters and Joiners of America ("the UBCJA")

---

[1] "Petition" or "Pet." refer to the January 10, 2025 Petition to Confirm an Arbitration Award. *See* Dkt. No. 1.

2

which provides that Respondent "agrees . . . to comply with the contractual wages, fringe benefits, hours and other working conditions established between the UBCJA affiliates." *Id.* at ¶ 8–9. The International Agreement automatically renews every three years from the date of signing unless there is proper notice of termination, which in this instance neither party provided. *Id.* at ¶¶ 12–13.

Under the International Agreement, "[p]ayment of annuity, pension and/or health and welfare contributions for an employee's work in each locality shall be made to such funds" as outlined in the CBA. *Id.* at ¶ 10. The CBA further requires Respondent to make contributions to the Funds for work performed within the geographical jurisdiction of the UBCJA. *Id.* at ¶ 14. In addition, the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy") governs the collection of employer contributions and is binding on Respondents pursuant to the CBA. *See id.* at 15–16; Dkt. No. 1-8.

Both the Collection Policy and CBA allow for periodic audits of the books and/or records of Respondent to ensure compliance with required contributions to the Funds. *See* Pet. ¶¶ 19–20. In the event of failure to contribute to the Funds, the Collection Policy provides for the resolution of disputes via arbitration. *Id.* at ¶ 17.

Under the CBA and Collection Policy, if an arbitrator finds that there are unpaid contributions, the Funds are entitled to collect: (1) the unpaid contributions; (2) interest on the unpaid contributions determined at the prime rate plus 2%; and (3) an amount equal to the greater of (a) the amount of the interest on the unpaid contributions, or (b) liquidated damages of 20% of the amount of the unpaid contributions. *Id.* at ¶ 21. The Collection Policy further provides that employers are liable for all attorneys' fees incurred by the Funds and "the entire cost of a payroll review and/or audit" if a matter proceeds to arbitration or litigation. *Id.* at ¶ 22.

## II.    PROCEDURAL HISTORY

Pursuant to the CBA and Collection Policy, Petitioners conducted an audit of Respondent for the period September 30, 2020 through December 28, 2021 ("the Audit"), which revealed that Respondent failed to remit $1,148 in contributions to the Funds.  Pet. ¶ 23.  It was further determined that Respondent owed an additional $14,268.39 for interest on late-paid contributions to the Funds.[2]  *Id.* at ¶ 24.  After Respondent failed to remit payment, Petitioners initiated arbitration proceedings before J.J. Pierson ("the Arbitrator").  *Id.* at ¶ 26.

On May 20, 2024, the Arbitrator held a hearing at which both parties were present and heard.  *Id.* at ¶ 27.  The Arbitrator rendered his award ("the Award") on June 24, 2024, awarding the Funds $23,363.73, consisting of: "(1) the principal deficiency contained in the Audit of $1,148; (2) interest of $268.67; (3) liquidated damages of $301.17; (4) promotional fund contributions of $7.50; (5) attorneys' fees of $1,500; (6) audit costs of $4,465; (7) court costs of $405; (8) non-audit late payment interest of $14,268.39; and (9) the arbitration fee of $1,000."  *Id.* at ¶ 27–28; *see also* Dkt. No. 1-11.  Further, the Arbitrator ordered pre-judgment interest to accrue on the Award at an annual rate of 10.5% from the date of the Award through the date of judgment.  Pet. ¶ 29.

Petitioners served Respondents with a demand for payment of the award on June 25, 2024.  *Id.* at ¶ 30.  After Respondent failed to remit payment or otherwise respond, Petitioners filed the instant action on January 10, 2025, seeking (i) confirmation of the Award and judgment in favor of Petitioners and against Respondent in the amount of $23,363; (ii) pre-judgment interest on the Award accruing from June 24, 2024 through the date of judgment at a rate of

---

[2] On June 6, 2025, this Court ordered Petitioners to submit a letter informing the Court of the contractual or legal basis for the Non-Audit Late Payment Interest, noting its unusually high amount. Dkt. No. 13.  Petitioners filed the requested letter on June 20, 2025.  Dkt. No. 14.

10.5%; (iii) attorneys' fees of $891.50; (iv) applicable costs of $128.10; (v) post-judgment interest at the statutory rate; and (vi) any additional relief as this Court deems proper. *See* Pet. at 8–9. As of the date of this Order, Respondent has not appeared in this action.

### III. LEGAL STANDARD

Section 301 of the LMRA provides federal courts with jurisdiction over petitions to confirm labor arbitration awards. *See Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal references omitted).

The court's role under the LMRA is limited; it acts as an affirmative body that renders an arbitration award a judgment of the court. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016); *42nd & 10th Hotel, LLC v. New York Hotel & Motel Trades Council, AFL-CIO*, 595 F. Supp. 3d 4, 12 (S.D.N.Y. 2022). Further, district courts may not reconsider the merits of an arbitration award; rather, they may "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Nat'l Football League*, 820 F.3d at 536.

"[A]n arbitrator's award resolving a labor dispute is 'legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice.'" *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) (quoting *Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)). Thus, "unless the

5

award is procured through fraud or dishonesty, the [arbitrator's] decision should not be disturbed." *Id*.

**DISCUSSION**

I.   **CONFIRMATION OF THE ARBITRATION AWARD**

The Court has reviewed the Arbitrator's Award and finds that the award should be CONFIRMED. There is no indication that the Arbitrator's award was procured through fraud or dishonesty, or that the Arbitrator was acting in disregard of the CBA or outside the scope of his broad authority as arbitrator. *See Local 97*, 196 F.3d at 124. Rather, the record indicates that the Arbitrator based his award on undisputed evidence that the Funds conducted an audit in accordance with the terms of the CBA and International Agreement and determined that Respondent had been delinquent in its contributions between September 30, 2020 through December 28, 2021. *See* Dkt. No. 1-11. The record further indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on submitted evidence. *Id*. Accordingly, based on the limited review which is appropriate for an uncontested petition, Petitioners' motion is GRANTED and the award is confirmed.

II.   **POST-JUDGMENT INTEREST**

Petitioners further request post-judgment interest accruing from the date of judgment until Respondent pays in full. *See* Pet. at 9. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," including when confirming arbitration awards. *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 465 (S.D.N.Y. 2022) (quoting *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir.

2013)). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

### III.   ATTORNEYS' FEES AND COSTS OF BRINGING THIS PETITION

Petitioners also seek to recover $891.50 in attorneys' fees for four hours of time and $128.10 in costs arising out of this Petition. *See* Pet. at 9. While the LMRA does not explicitly provide for recovery of attorney's fees, a court may award them when the opposing party refuses to abide by the arbitrator's decision without justification. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-CV-5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003); *Dist. Council No. 9, Int'l Union of Allied Painters & Allied Trades, AFL-CIO v. Impact Storefront Designs*, No. 22-CV-10519 (JGK), 2023 WL 3818408, at *3 (S.D.N.Y. June 5, 2023). When determining whether attorneys' fees should be awarded, courts also inquire whether there is an applicable collective bargaining agreement which entitles the moving party to this award. *See, e.g., Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund*, 636 F. Supp. 3d at 462. If attorneys' fees are warranted, the court will assess whether the requested amount is reasonable. *See id.* at 466. "A reasonable hourly rate is a rate in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *Id.* (internal references omitted).

Here, an award of attorneys' fees and costs is warranted. Both the CBA and the Collection Policy explicitly entitle Petitioners to recover reasonable attorneys' fees and costs incurred while collecting delinquencies. *See* Pet. ¶¶ 34–35; Dkt. 1-3 at 52. When Respondent entered into the CBA, it agreed to submit all disputes regarding its payment obligations to binding arbitration and comply with the Arbitrator's ruling and order. *See* Pet. ¶¶ 15–16. This

includes, *inter alia*, attorneys' fees for bringing the dispute to arbitration, if awarded by the Arbitrator. *Id.* at ¶¶ 21–22. Respondent has not complied with the Award, nor has it provided any justification for its failure to do so. For these reasons, the Court finds that it is just and reasonable to award Petitioners attorneys' fees and costs pursuant to bringing this action, as well as affirm the Arbitrator's award of attorneys' fees for the arbitration.

Furthermore, the fees and costs are reasonable. The fees are based on the following rates provided by the Petitioners: $410 per hour for Ms. Moosnick, a partner; $310 per hour for Ms. Smith, an associate; and $155 per hour for Ms. Frankel, a paralegal. *See* Dkt. No. 1 ¶¶ 37–39. Petitioners have provided detailed time records and met their burden of proving the reasonableness and necessity of hours spent, rates charged, and litigation costs incurred, especially given the modest amount of time—four hours—spent in connection with this matter. *See* Dkt. No. 1-13. Furthermore, Courts in this district have awarded requests for attorneys' fees substantially similar to those requested by petitioners. *See Trs. of New York City Dist. Council of Carpenters Pension Fund v. M & K Constr. Servs. Corp.*, No. 1:25-CV-00138 (JLR), 2025 WL 1665196, at *4 (S.D.N.Y. June 12, 2025) (awarding $1,903.50 in attorneys' fees for six hours of work); *District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America v. Triangle Enterprise NYC, inc.*, No. 24-CV-06498 (ER), 2025 WL 1659058, at *4 (S.D.N.Y. June 9, 2025) (awarding $2,490 in attorneys' fees for 8.3 hours of work). The fees and costs sought are eminently reasonable and appropriate and, accordingly, the Court grants Petitioners' requests for attorneys' fees and costs.

## CONCLUSION

For the reasons stated above, the Court GRANTS Petitioners' unopposed Petition to confirm the Award. Judgment is entered in favor of Petitioners and against Respondents as follows:

1. The June 24, 2024, Award is confirmed in all respects;

2. Respondent is ordered to pay Petitioners a total of $23,363.73, plus interest at the annual rate of 10.5% from June 24, 2024 through the date of this Judgment, pursuant to the terms of the Award;

3. Respondent is further ordered to pay Petitioners $891.50 in attorneys' fees and $128.10 in costs arising out of this action; and

4. Respondent is further ordered to pay Petitioners post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961(a).

The Clerk of Court is respectfully directed to enter judgment as set forth above and CLOSE this case.

Dated: August 7, 2025
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge